UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,        CRIMINAL NO. 21-CR-357

v.              HON. CHRISTOPHER R. COOPER

JOSEPH CASTEN

    Defendant.

_____/

<u>**Government's Sentencing Memorandum**</u>

   Defendant Joseph Casten stands convicted of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  Casten downloaded hundreds of images and/or videos of child pornography between 2013 and November of 2017, the date of the FBI search warrant at his home. The majority of these videos depicted the horrific abuse of young boys, although some also depicted little girls. He also downloaded P2P software, making hundreds of the graphic and exploitive images and/or videos in his "collection" available to other Internet users.[1] For the reasons stated in this memorandum, the government requests a low-end guideline sentence of **97 months.**

**I.  Facts and Procedural History**

   On September 7, 2017, an undercover agent discovered that the defendant was distributing child pornography through the use of a peer-to-peer software (P2P) program.  P2P file sharing is a method of communication available to Internet users through the use of special

_____

[1] During much of this time (from 2015 to 2017) he was a Spanish teacher at Murch Elementary School in D.C.

software.  Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network.  A user first obtains the P2P software, which can be downloaded from the Internet.  A user obtains files by opening the P2P software on the user's computer, and conducting a search for files that are of interest and currently being shared on the network.  Gnutella Clients set up searches by keywords.  The results of a keyword search are displayed to the user.  The user then selects file(s) from the results for download.  The download of a file is achieved through a direct connection between the computer requesting the file and the computer containing the file.

For example, a person interested in obtaining child pornographic images would open the P2P application on his/her computer and conduct a keyword search for files using a term such as "preteen sex."  The search is sent out over the network of computers using compatible P2P software.  The results of the search are returned to the user's computer and displayed.  The user selects from the results displayed the file(s) he/she wants to download.

In this case, the defendant was using Gnutella client software, and the undercover agent was able to download several of the files he was sharing via the P2P network.  Some of these files contained child pornography.  PSR ¶ 12.  The agent also observed that Casten had 333 files that were available for sharing.  After a few additional days of undercover work, and after several subpoena results confirmed Casten's address as the address associated with the IP address sharing these files, in November of 2017, the FBI, in conjunction with MPD, executed a federal residential search warrant at Casten's residence on Connecticut Avenue in Northwest D.C.  PSR ¶ 13.  They recovered numerous electronic devices, to include an HP laptop, an Apple MacBook Pro laptop, and Casten's iPhone.  *Id.*  Casten said that he lived alone at his apartment and that he had been living there since June or July.  *Id.*  At the time of the search warrant execution and

during the time these files were downloaded, Casten was a Spanish teacher for D.C. Public Schools at Murch Elementary School in Washington D.C. PSR ¶ 71.

A forensic examiner reviewed the devices and observed the existence of a peer-to-peer program, portions of at least one of the child pornography files that was shared with the UC, and a number of file names indicative of child pornography that were connected to the peer-to-peer file sharing program. PSR ¶ 14. In August of 2020, a complete forensic examination was conducted on all of the devices, which remained in FBI custody. PSR ¶ 15. That forensic examination revealed files meeting the federal definition of child pornography on both the HP laptop and the Apple MacBook Pro laptop. There were over 150 images and 18 videos of child pornography on the HP laptop. PSR ¶ 16. There were numerous sexually explicit images and/or videos on the HP laptop of little boys. PSR ¶ 16.

At least some of the recovered images were under the file path **users/joseph/AppData/Local/Microsoft\Windows\Explorer\thumbcache…** For example, there was an image under this file path depicting a little girl, under the age of 10 years old, sitting with her legs spread open and urinating. PSR ¶ 17. Casten downloaded the images and videos of child pornography from the Internet on the HP laptop and MacBook between the dates of October of 2013 and November 7, 2017. PSR ¶ 18.

The MacBook contained two images. One was under the file path **users\josephcasten\library\caches\com.apple.safari\webkitcache\version 11\Blobs** and depicted a topless prepubescent girl with her legs spread wearing only underwear. PSR ¶ 19. The other was a video entitled **boy + man vid** with a date of January 16, 2017 that was under the file path **users/josephcasten/music/itunes/itunes media/homevideos**. This video was one minute and 24 seconds and depicted a toddler in a bathtub. In the video, an adult male is placing

the toddler's hand on his penis.  PSR ¶ 19.

Many of these videos and images depict in graphic detail the anal rape, forced performance of oral sex, or other sexual abuse of very young boys.  Several of the video titles in Casten's collection advertised themselves by describing the abuse as "great," describing the sexual acts depicted in them, advertising incest, advertising the age of the children abused, or adding exclamation points to emphasize the abuse.

Examples of the files Casten distributed and downloaded include: [2]

- A video entitled "**[boy+man]!!!!! … boy& dad fuck…**" depicted a child lying on his back with his legs above his body and spread apart.  In the video, an adult male stands in front of the child and the adult male anally rapes the child multiple times.

- A video entitled "**… - 9 yo boy & man in car…sucking …**" depicted an adult male masturbating his bare penis while rubbing the head and buttocks of a male child.  In the video, the adult male has the child perform oral sex on him.  Later in the video, the adult male masturbates the male child's bare penis.

- A video entitled "**3…boys…**" depicted three nude minor male children sitting on a couch. The video begins with the minor male child to the far left in the video being masturbated by the minor boy seated in the middle.  The minor male child to the far left later masturbates his own bare penis.  The minor male child seated in the middle masturbates the bare penises of the other two minor males seated on the couch and at one point rubs his own penis.

---

[2]  The titles of these videos are not revealed in order to prevent them from being used to further disseminate child pornography.  They are extremely graphic.  It is true that some of the descriptions above are also graphic.  Without actually attaching videos or images as exhibits, and in fairness to the victims, the Government provides these descriptions in an attempt to accurately convey their contents.  *See United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012) (criticizing the "sterilization" that takes place once child pornography enters the legal system and the "clinical" way in which images are frequently described).

- A video entitled "**… 2014 10yo boys great anal …**" depicted two nude pre-pubescent male children engaging in anal sex.

Over 59 victims were identified in the videos and images that Casten distributed.  The Government has already received multiple restitution requests and anticipates victim impact statements will be filed later this week.

On June 29, 2021, the defendant pleaded guilty to possession of child pornography pursuant to a Rule 11 agreement.  PSR ¶ 4.

The parties calculated the same range as the PSR and all agree that the correct guideline range is **97-121 months**.  PSR ¶ 6.   Neither party filed objections to the Guideline range calculated by Probation.

This Court set sentencing for November 2, 2021.

## II.    The factors under 18 U.S.C. § 3553(a) warrant a Guideline range Sentence

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors to Defendant's case are evaluated below.

### A.  The Sentencing Guideline Range

In 1984, Congress passed the Sentencing Reform Act, establishing the U.S.  Sentencing Commission.  Congress delegated authority to the Commission to "develop[] guidelines that will further the basic purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation." 28 U.S.C. § 994(a); *see* U.S. SENTENCING COMMISSION GUIDELINES MANUAL, CH. 1; *United States v. Rita*, 551 U.S. 338 (2007) (noting that, in formulating the Guidelines, the Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a)).  On April 13, 1987, the Commission submitted its first version of the Guidelines to Congress for review. *Id.* at 2.  Congress approved them, and they took effect in November of 1987.  *Id.*  Each year, the Commission has the ability to make amendments to the Guidelines by submitting those amendments to Congress for approval.  *Id.*  Congress has also directly mandated Guideline amendments on multiple occasions.  *See United States v. Pugh*, 515 F.3d 1179, 1197-98 (11th Cir. 2008) (collecting amendments).

The legislature has the ability to endorse or reject the Guidelines and the way they are calculated for every category of offenses.  And, Congress has very clearly endorsed the Guidelines as they now stand for child pornography offenses.  "Congress has taken an active role" in determining appropriate guidelines for these types of offenses.  *United States v. McNerney*, 632 F.3d 772, 775 (6th Cir. 2011).  In 2003, Congress passed the PROTECT Act, responding to the inadequacy of sentences in child pornography cases.  *See* H.R. Rep. No. 108-66, 108th Cong., 2nd Sess. 58-59 (2003).  And, in 2012, Congress passed the Child Protection Act, which increased the maximum punishment for certain child pornography offenses.

As the Sentencing Commission noted, "[f]or more than 30 years, and particularly in recent years, Congress has focused attention on the scope of child pornography offenses and the severity

of penalties for child pornography offenders.  Through creating new offenses, enacting new mandatory minimums, increasing statutory maximums, and providing directives to the Commission, Congress has repeatedly expressed its will regarding appropriate penalties for child pornography offenders.  Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses."  HISTORY OF CHILD PORNOGRAPHY GUIDELINES, at p. 6 (2009). [3]

In this case, the parties agree that the Guidelines for possession of child pornography are **97-121 months.**  While the Guidelines are advisory and courts are permitted to object to them on a policy basis, such a disagreement will be "scrutinized closely."  *United States v. Herrera-Zuniga*, 571 F3d 568, 585 (6th Cir. 2009); *see also United States v. Rita*, 551 U.S. 338, 350 (2007) ("[I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives.").

And given Congress's active role in the sentencing guidelines for child pornography offenses, such a disagreement takes on a "formidable task":

> [I]t is [] Congress's prerogative to dictate sentencing enhancements based on a retributive judgment that certain crimes are reprehensible and warrant serious punishment as a result.  When a congressional directive reflects such a judgment, a district court that disagrees with the guideline that follows must contend with those grounds too.  Thus, when a guideline comes bristling with Congress's own empirical and value judgments – or even just value judgment – the district court that seeks to disagree with the guideline on policy grounds faces a considerably

---

[3] It is Congress and not the Commission that has the ultimate authority with respect to the Guidelines.  As the Sixth Circuit noted, "the Constitution merely tolerates, rather than compels, Congress's limited delegation of power to the Commission." *United States v. Bristline*, 665 F.3d 758, 762 (6th Cir. 2012).

more formidable task than the district court did in *Kimbrough*. A court that disagrees with § 2G2.2 must take on this formidable task.

*Bristline*, 665 F.3d at 764.

A Guideline range sentence of **97 months** in this case satisfies the objectives of 18 U.S.C. § 3553(a).

### B.   Nature and Circumstances of the Offense, 18 U.S.C. § 3553(a)(1)

The Defendant's conduct falls within the heartland of child pornography possession offenders. First, he not only possessed images and videos, he distributed them and made them available to others on a P2P network. In fact, on the day the undercover gained access to his available files, there were more than 333 files advertised, and she later learned that NCMEC reported that, of those advertised on that particular day, there were 59 already-identified victims. All of this on just one day. Second, he possessed videos of young boys, and the titles of some of the videos advertised themselves as such. Moreover, some of the titles contained exclamation points (celebrating the abuse depicted therein), described their content as "great," and explicitly and graphically described the sexual acts they contained. Casten downloaded and enjoyed these videos in spite of or perhaps even because of the trauma these children endured. Finally, Casten's activity appears to have spanned over several years, during the time that he was a Spanish teacher at an elementary school in D.C. Casten's conduct warrants a Guideline range sentence of **97 months**.

### C.   History and Characteristics of the Defendant

The history and characteristics of the Defendant warrant a Guideline range sentence of **97 months**. There can be no doubt that Casten had a difficult childhood, raised by a single mother who had mental health issues. PSR ¶¶ 45, 49. He described also having been sexually abused by a cousin from the age of 10 to the age of 14. *See* Def. Kraft. Rept. at 3. At the same time, Casten

graduated from high school, obtained his bachelor's degree from William & Mary, is in good physical health, and reports that he has never been diagnosed with a mental health disorder.   PSR ¶¶ 57, 59, 65, 66.  Casten's prior sexual abuse is not an excuse for him perpetuating the abuse of other children by distributing and viewing depictions of their sexual abuse.  And, Casten, despite having an attraction/fascination with the sexual abuse of children, chose to work in a field in which he was surrounded by children, some of whom were the same age range as those depicted in the videos he downloaded.   Casten's choice to download this kind of content was not a spontaneous decision made in a moment of weakness.  This was repeated conduct that occurred over months and years.

Although Dr. Kraft's report is helpful in understanding Casten's background, it is not a psychosexual evaluation, nor can it be used as a predictor of recidivism or risk to the public.  The Hare-Psychopathy test is most commonly used for this purpose, and it measures risk on two dimensions: sexual deviance and antisocial behavior.   Other tests commonly used, but not predictive of recidivism or risk, are tests like the MMPI and Static-99R.  Here, Kraft used no tests. His report is instead almost entirely based on Casten's accounting of what occurred.  He did not even look at any evidence in this case (no child pornographic images or videos, no forensic reports).  He reviewed only the search warrant affidavit and the complaint.

Had he reviewed the child pornography, he would have seen a consistent pattern in the types of images and videos Casten downloaded and that (as revealed in the forensic report), while most of Casten's files were deleted, Casten did save files – either in his P2P account or in at least one instance in his josephcasten\music\itunes\Home Videos folder.

D.       **Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense**

Child pornography offenses are extremely serious because they both result in perpetual

harm to victims and validate and normalize the sexual exploitation of children.  Courts across the

country have recognized this:

> There can be no keener revelation of a society's soul than the way in which it treats its children.  Given the current statistics, surrounding child pornography, we are living in a country that is losing its soul.
> Child pornography is a vile, heinous crime.  Mention the term to your average American and he responds with immediate disgust and a sense of unease.  However, once it enters the legal system, child pornography undergoes sterilization.  The sterilization goes far beyond properly removing emotion from sentencing decisions.  Images are described in the most clinical sense.  Victims all too often remain nameless.  The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

*United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723

(6th Cir. 2012).[4]

In passing 18 U.S.C. § 2251, Congress similarly described the evil of

child pornography:

>  [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . [The] existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children . . . it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110

---

[4] *See also In re Amy Unknown*, 636 F.3d 190, 201 n.12 (5th Cir. 2011) (*citing United States v. Norris*, 159 F.3d 926 (5th Cir. 1998) (describing how the distribution of child pornography creates a marketplace for images of children, perpetuating abuse); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

Stat. 3009, 3009-27 (1996).

There is perhaps no greater invasion of privacy than that caused by the dissemination of child pornography. With a click of the button on a camera, the sexual abuse of these children is memorialized forever. It is terrible enough that a child has to live with the memory of his or her nakedness and abuse in front of the initial photographer. It is hard to even comprehend how that child could also then learn to cope with the fact that strangers everywhere are using that painful memory to sexually gratify themselves and that he or she can do *nothing to stop them from continuing to do it*.

The only recourse these children have are the laws banning child pornography, but people like Joseph Casten, who scour the internet searching for images and videos showing children being forced to participate in sexual acts, have no respect for the law. Casten made the conscious decision to download P2P software so he could gain greater access to child pornography and then continued to make the decision again and again to view and download video after video of children being sexually abused.

A sentence of **97 months** is necessary to promote respect for the law, ensure just punishment, and to reflect the seriousness of the Defendant's offense.

### E.    Adequate Deterrence and Protection of the Public

The possession, receipt, and distribution of child pornography endanger the public by encouraging rape, violence, and abuse. In *United States v. Miller*, 665 F.3d 114, 123 (5th Cir. 2011), the Fifth Circuit called it

> an undeniable fact that real children are being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty

Case 1:21-cr-00357-CRC   Document 43   Filed 10/27/21   Page 12 of 15

> years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today.

Casten's offense involved videos/images depicting the sexual abuse of over 59 known children and dozens more who are either unaware that their pictures and videos are being disseminated, or else are still hiding in the shadows of their pain.

Deterrence with respect to child pornography offenses is of particular import for three reasons. First, serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production.

> The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007).

Second, both Congress and the courts have recognized the high recidivism rates for these types of offenders. *See* Blaisdell, Krista, Note, *Protecting the Playgrounds of the Twenty-First Century: Analyzing Computer and Internet Restrictions for Internet Sex Offenders*, 43 Val.U.L. Rev. 1155, 1192, n.150 (2009) (compiling congressional statements regarding the high risk of recidivism among child sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008); *United States v. Allison*, 447 F.3d 402, 405-06 (5th Cir. 2006); *United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011) ("We need evidence-driven law just as we need evidence-driven medicine . . . statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children.") (citations omitted).

Third, there is an undeniable link between sexual contact offenses and the receipt and distribution of child pornography. "An offender's pornography and erotica collection is the single

best indicator of what he wants to do." *See* Lanning, Kenneth V., *Child Molesters: A Behavioral Analysis – For Professionals Investigating the Sexual Exploitation of Children*, Office of Juvenile Justice and Delinquency Prevention, Fifth Ed. 2010, at 107.

A sentence of **97 months** is necessary in this case to deter the Defendant from future participation in this market and to prevent him from doing something far worse, acting on his sexual interests by physically hurting a child. A Guideline sentence will serve to protect the public and ensure specific and general deterrence.

> **F.     Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities.**

A Guideline sentence in this case fits comfortably within the range of sentences that similarly situated defendants, those who distribute and possess child pornography, receive. The defense attaches a number of examples of sentences where offenders across the country have received probation or near probationary sentences for possession. To this, the Government could find an equal number of district courts who have imposed sentences at or above the guidelines in these cases, particularly in cases where a defendant who distributed child pornography (as Mr. Casten did) receives the benefit of a plea to possession. Maybe more helpful is the latest Sentencing Commission Report, which suggests that the average sentence for a non-production offender was 103 months in 2019. 2020 Commission Rept. at 5.[5] The Report actually discusses specifically the average sentence for a defendant convicted of possession, but with a distribution enhancement, in a study of 82 such offenders, finding the average to be 57 months, and the average for distribution offenders in the same study (with 190 such offenders) to be approximately 100 months. 2020 Commission Rept. at 57-58.

---

[5] The 2020 Commission Report, like the Report in 2012, suggests that some additional enhancements are appropriate based on the evolution of child exploitation crimes, but, as the defense points out, both reports also suggest that some enhancements are outdated.

**III.     Conclusion**

The government recommends a sentence of **97 months**' imprisonment.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar Number 415793

By:      /s/April Nicole Russo

April Nicole Russo
PA Bar No. 313475
Assistant United States
Attorney 555 Fourth Street,
NW Washington, D.C. 20530
(202) 252-1717
april.russo@usdoj.gov

Dated:  October 26, 2021

## <u>CERTIFICATE OF SERVICE</u>

On October 26, 2021, the undersigned hereby certifies that a true and correct copy of the

foregoing was electronically filed and served upon defense counsel electronically.

<u>/s/April Nicole Russo</u>

April Nicole Russo
PA Bar No. 313475
Assistant United States
Attorney 555 Fourth Street,
NW Washington, D.C. 20530
(202) 252-1717
april.russo@usdoj.gov